## Keystone Guard *v.* Beaman et al.

*Beneficial societies—Fraudulent sale of assets—Legal fraud—Officers and directors—Conspiracy—Equity—Equity jurisdiction.*

1. On a bill in equity against the officers and directors of an incorporated beneficial society to recover moneys received by them from the assets of the society, where it is charged that the directors fraudulently joined in a conspiracy to transfer the assets and control of the society to irresponsible persons, with the knowledge that such persons intended to loot the society, a decree against one of the directors for the amount that was actually received by him, will be sustained, where it appears that although the court below exonerated him from the charge of conspiracy and actual fraud, it found him guilty of a legal fraud in agreeing to stand aside, for a consideration payable from the funds of the society, and permit strangers to secure possession of the society and its assets.

2. In such a case, equity has jurisdiction, as the action is based upon the misfeasance of corporate officers in unlawfully and fraudulently receiving corporate funds.

*Corporations—Officers—Gifts or bribes—Directors.*

3. Gifts, gratuities or bribes given to a director to influence his official action, must be accounted for by him and surrendered to the company.

Argued March 17, 1919.  Appeal, No. 144, Jan. T., 1919, by U. M. Fell, from decree of C. P. Bradford Co., Dec. T., 1911, No. 1, on bill in equity in case of The Keystone Guard, a corporation in the hands of J. W. Ballard, Receiver, v. J. W. Beaman, U. M. Fell et al.  Before

STEWART, MOSCHZISKER, FRAZER, WALLING and KEP-
HART, JJ.  Affirmed.

Bill in equity to compel officers and directors of a cor-
poration to repay funds misappropriated.

The court entered a decree directing U. M. Fell to pay
plaintiff the sum of $5,000.  U. M. Fell appealed.

*Error assigned* was the decree of the court.

*John C. Ingham,* for appellant.—The decree made by
the court in this case, as to the appellant, is based upon
an entirely different theory than that set out in the bill
and from that upon which the case was tried: Luther v.
Luther, 216 Pa. 1; Frey v. Stipp, 224 Pa. 390; Ritten-
house v. Newhard, 232 Pa. 433; Spangler Brewing Co.
v. McHenry, 242 Pa. 522; Thompson's App., 126 Pa. 367;
D. & H. Canal Co. v. Penna. Coal Co., 21 Pa. 131; Sum-
mers v. Shryock, 46 Pa. Superior Ct. 231; McFarland
v. Heverly, 46 Pa. Superior Ct. 435; Miller v. Piatt, 33
Pa. Superior Ct. 547.

The proofs having established that the appellant was
not a party to the conspiracy charged, the prayer for
general relief will not justify a decree against him on
some other ground: Passayunk Building Assn.'s App.,
83 Pa. 441; D. & H. Canal Co. v. Penna. Coal Co., 21 Pa.
131; Com. v. Del. & Hudson Canal Co., 43 Pa. 295; Cum-
berland Valley R. R. Co.'s App., 62 Pa. 218; Kelsey v.
Murphy, 26 Pa. 78.

*Charles M. Culver* and *James Scarlet,* for appellees.

OPINION BY MR. JUSTICE WALLING, April 21, 1919:
This bill in equity is by the receiver of a defunct bene-
ficial corporation against its officers and directors for
misfeasance and unlawful appropriation of corporate
funds.  In 1906 the Keystone Guard, a beneficial society,
was chartered as a Pennsylvania corporation, with head-

quarters at Athens in Bradford County. It grew rapidly, established subordinate branches in many states and in 1910 had about nine thousand members, divided into three classes, all of whom paid dues and assessments; from this a surplus of about $274,000 had accumulated, which was invested in mortgages, bonds, etc. It had a board of nine directors, including the president. The directors and officers, including a secretary and treasurer, were chosen for terms of four years at the general biennial conventions, that for 1910 being held at Denver in June. Prior to which convention the directors had been approached by one J. E. Blackburn, and other nonresidents acting with him, for the purpose of securing control of said corporation and its assets, ostensibly to merge it in a larger corporation, but in reality to fraudulently misappropriate the assets. Some of the supreme officers, including the president and secretary, entered into a conspiracy with Blackburn by which for the consideration of $100,000 they were to give him control of the corporation and its property. This was to be accomplished by five of the old directors refusing to stand for reëlection at the Denver convention and by electing in their places an equal number named by Blackburn, which was done.

On July 8, 1910, Blackburn, who had been elected treasurer, and some of his associates, came to Athens, paid $50,000 of the bribe money (the balance being secured and paid later) and obtained possession of the corporate assets, which were removed from this State and misappropriated. By the terms of the conspiracy each of the old directors was to and did receive $5,000, and the balance of the $100,000 was to be and was secretly divided among the three leading conspirators, to wit: the president, secretary and medical director. All of the bribe money was secured by and paid from the corporate assets and none was advanced or paid by Blackburn. The appellant, U. M. Fell, was a director and auditor of the corporation, but resided fifteen miles from Athens

and the court below has found was not a conspirator; however, prior to the Denver convention the matter of turning over the corporation was discussed with him by other directors and he understood that by not standing for reëlection he would receive $5,000, but not from the corporation. He complied with this understanding, remained away from Denver, did not stand for reëlection and received the $5,000, by the hand of another director, shortly after the 8th of July. While Mr. Fell received a small compensation for his services as director, he did not intend to stand for reëlection and there was no actual consideration for the $5,000. The court below finds him innocent of conspiracy, but influenced by a selfish cupidity and, by incautiously concurring in certain steps of others, he assisted in the consummation of the conspiracy, although he did not know of the design of Blackburn.

In furtherance of the scheme the constitution of The Keystone Guard was amended at the Denver convention so as apparently to permit a reinsurance of the members in other societies, and, later, after the treasury had been rifled and the valuable securities replaced by others of little or no value, Blackburn made some arrangement, not authorized by law, for reinsuring the members in an Illinois society known as the American Patriots.

In 1911 on the initiative of the attorney general of the Commonwealth, the court ousted the Keystone Guard of its corporate franchises and appointed plaintiff its receiver. He filed this bill the same year against nineteen defendants, including the old and new directors and others associated with them, charging conspiracy, fraud, misfeasance in office, misappropriation of corporate funds, etc.; and, inter alia, charging Fell with the unlawful receipt of the $5,000 of funds fraudulently taken from the corporation; praying, inter alia, for discovery and an accounting and that the defendants (naming them, including Fell), "be decreed to account jointly and severally to your orator for the several sums of money received by all and each of said conspirators, and

that a decree be entered to pay over the same to your orator as receiver of The Keystone Guard"; also praying that the defendants joining in the conspiracy be decreed liable in solido for the total amount of money fraudulently and illegally obtained from The Keystone Guard by reason of the conspiracy; also a prayer for general relief.    Some of the defendants were not brought in, others permitted judgment to be taken against them pro confesso, while some, including appellant, answered, and as to them the case went to trial on bill, answer, replication and testimony; from which the chancellor found the facts and stated his legal conclusions.    The defendants joining in the conspiracy were held liable in solido for the entire loss, while Fell and another, exonerated from the charge of conspiracy, were held liable merely to refund the amount of corporate money unlawfully received by them respectively.    These findings were approved by the court below and the final decree as to Fell was that he pay back $5,000 and costs; from which he brought this appeal.

It is earnestly urged here, as it was in the lower court, that appellant having been relieved of the charge of conspiracy cannot under the pleadings be decreed to refund the $5,000; and our attention is called to the well-settled rule that, "The relief afforded by a decree in equity must conform to the case as made out by the pleadings as well as to the proofs" (Spangler Brewing Company v. McHenry, 242 Pa. 522; Frey v. Stipp, 224 Pa. 390; Luther v. Luther, 216 Pa. 1) ; but the same authorities hold that it is the essential facts which must be averred and proved. Plaintiff will not be denied relief for failure to prove the nonessential averments of the bill; it is sufficient if one valid charge be established: The Cumberland Valley R. R. Company's App., 62 Pa. 218.    Plaintiff is required at law or in equity to prove only such of his allegations as are necessary to sustain the claim.    The bill charges fraud as well as conspiracy and while the court below relieves appellant from the charge of actual fraud, yet

under the facts found the transaction amounts to a legal fraud; for where a director of a beneficial society accepts $5,000, to stand aside so that strangers may get possession of the society and its assets, it is a fraud in law regardless of guilty knowledge on his part; and if the $5,000 belongs to the society equity may decree its restoration. A charge of actual fraud is sustained by proof of a constructive fraud: Ricketts' App. (Pa. Supreme Court), 21 W. N. C. 229, 235. Appellant has $5,000 for which he paid nothing and which had been practically stolen from the society and this he is legally bound to return, and he would be liable in assumpsit for money had and received. But equity has jurisdiction under the facts found, especially as the action is based on the misfeasance of corporate officers: Thompson on Corporations, sec. 4027. Neither the question of an adequate legal remedy, nor of multifariousness, nor of misjoinder, is raised in the record, the case being rested on the ground that the facts found do not sustain the allegations of the bill. If the only charge was conspiracy, that contention should prevail; but while that is the principal complaint the bill goes further and charges fraud and misconduct in office and especially charges appellant with the unlawful receipt of the $5,000 of corporate funds; these allegations are sustained by findings based on ample evidence and justify the decree for restoration of the money as prayed for. A case proper for equitable relief is thus shown aside from the question of conspiracy. Of course the charge of conspiracy was found as to other defendants, and that thereby the money came to appellant; but he can no more retain it, because not a particeps criminis, than he could retain a stolen horse because not a party to the theft. The defendants are all designated in the bill as "conspirators" and wherever repeated therein it is manifestly intended to embrace each defendant, and although subsequently the court below exonerated appellant from that charge, yet the other allegations and findings are ample to sustain the decree

complained of. That being so it is not material, as above stated, that the allegation of conspiracy was not sustained against this defendant.

Aside from the question of pleading, there is no doubt of appellant's liability to return the money. "Gifts, gratuities, or bribes given to a director to influence his official action must be accounted for by him and surrendered to the company": 10 Cyc. 795; and a case quite like the present is McClure v. Law, 161 N. Y. 78, where the director was held liable to the corporation for the money so received. See also Gilbert v. Finch, 173 N. Y. 455, and Thompson on Corporations, sec. 4027.

The decree is affirmed and appeal dismissed at the cost of appellant.